1

2          IN THE UNITED STATES DISTRICT COURT

3          FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5    JAMES P. MALVEAUX,                    Case No.  17-cv-05004-CW

6              Plaintiff,
                                          ORDER GRANTING MOTIONS TO
7         v.                              DISMISS SECOND AMENDED
                                          COMPLAINT
8    WELLS FARGO BANK, N.A.;
     BARRETT DAFFIN FRAPPIER TREDER       (Docket Nos. 53, 60, 63, 65,
9    & WEISS, LLP; FIRST AMERICAN         71)
     TITLE COMPANY; BANK OF NEW
10   YORK MELLON f/k/a BANK OF NEW
     YORK as Trustee for WORLD
11   SAVINGS REMIC TRUST, MORTGAGE
     PASS-THROUGH CERTIFICATES,
12   SERIES 19; RALPH PARTNERS II,
     LLC; AND ALL PERSONS KNOWN OR
13   UNKNOWN CLAIMING AN INTEREST
     IN THE SUBJECT PROPERTY, and
14   DOES 2 through 50, inclusive,

15              Defendants.

16

17

18        Now pending are motions to dismiss the Second Amended

19   Complaint (2AC) by Wells Fargo Bank, N.A., formerly known as

20   Wachovia Mortgage, FSB and World Savings Bank, FSB (Wells Fargo),

21   and the Bank of New York Mellon, formerly known as the Bank of

22   New York, Docket Number 53; Barrett Daffin Frappier Treder &

23   Weiss, LLP (Barrett Daffin), Docket Number 60; First American

24   Title Company (First American), Docket Number 63; Ralph Partners

25   II, LLC (Ralph Partners), Docket Number 65; and Billie Malveaux,

26   Docket Number 71.  For the reasons set forth below, the motions

27   are GRANTED.

28   //

The 2AC is the third complaint filed in this action by Plaintiff James P. Malveaux, who is represented by counsel. Docket No. 49.  On December 28, 2017, the Court granted motions to dismiss the prior iteration of the complaint, the First Amended Complaint (1AC).  In that Order, the Court noted that it would "grant[] one further opportunity for Plaintiff to amend his claims," and that "Plaintiff may replead any or all of his dismissed claims if he can truthfully allege, without contradicting the allegations in his previous complaints, facts sufficient to show that he is entitled to relief."  Docket No. 36 at 2, 20.  Plaintiff filed the 2AC on January 28, 2018.  Docket No. 49.

In the 2AC, Plaintiff alleges the following facts. Plaintiff owns a single-family residence (the property) in Pacifica, California.  On or about June 16, 2005, Plaintiff and his then-wife, Billie Malveaux, executed an adjustable rate mortgage secured by the property, consisting of a deed of trust, note, and adjustable rate rider.  Plaintiff alleges that the loan was a "Pick-a-Payment" loan.  2AC ¶ 8 at 3.[1]  The deed of trust identifies World Savings Bank, FSB, as the lender and original servicer and Defendant First American Title Company as the title insurance company.

Defendant Wells Fargo "holds itself out as the current servicer of Plaintiff's mortgage loan."  Id. ¶ 2 at 2.  Barrett

---

[1] The paragraph numbers in the 2AC repeat multiple times; accordingly, both page numbers and paragraph numbers are cited here.

Daffin provides legal services and "default and foreclosure services." Id. ¶ 3 at 2. The Bank of New York Mellon serves as trustee for the World Savings Remic Trust, Mortgage Pass-Through Certificates, Series 19. The role of Ralph Partners is not described in the 2AC, but in the 1AC, Plaintiff alleged that Ralph Partners had purchased the property in a foreclosure sale. See 1AC ¶ 79.

A notice of default and election to sell under the deed of trust was recorded on August 22, 2010. A notice of rescission of this notice of default was recorded on August 8, 2014.

On October 29, 2015, a substitution of trustee was recorded, appointing Barrett Daffin as trustee under the deed of trust. Plaintiff alleges that this substitution violates the terms of the deed of trust.

A second notice of default and election to sell under the deed of trust was issued on February 18, 2016, by Barrett Daffin, and recorded on February 22, 2016. Plaintiff alleges that this notice was defective due to a July 2005 securitization of his loan. A notice of trustee's sale was recorded on December 20, 2016.

In January 2017, Plaintiff, represented by different counsel, filed a lawsuit in San Mateo County Superior Court, challenging Defendants' right to foreclose. Malveaux v. Wells Fargo Bank, N.A., San Mateo Superior Court No. 17-civ-00328. On January 25, 2017, the state court denied Plaintiff's petition for a temporary restraining order (TRO) enjoining foreclosure. Defendants filed a demurrer to the complaint, which the state court sustained at a hearing on April 25, 2017, followed by a

written order filed May 11, 2017. The state court granted
Plaintiff leave to amend, but Plaintiff did not timely amend his
complaint and, on June 14, 2017, voluntarily dismissed the action
without prejudice. Plaintiff alleges that he did so because a
Wells Fargo representative informed him that the bank would allow
him to sell his home through his realtor or give him a loan
modification only if he dismissed his state court lawsuit. Id.
¶¶ 74 at 21, 130 at 34.

Plaintiff alleges that he began submitting the requested
documents for a loan-modification application around the time
that he voluntarily dismissed his state court lawsuit. On July
3, 2017, a representative of Wells Fargo spoke with Plaintiff and
indicated that Plaintiff's loan-modification application was
missing three documents. Id. ¶ 78 at 22. Plaintiff submitted
the documents. Id. ¶ 80 at 22. Weeks later, in August 2017, a
different Wells Fargo representative asked Plaintiff to have his
ex-wife "sign over the deed for the property to Plaintiff." Id.
¶ 86 at 22. Plaintiff alleges that this prevented him from
submitting the documents required for the loan modification. Id.
¶ 129 at 30 (alleging that his application was "complete but for
the note"); id. ¶ 86-87 at 22 (alleging that Wells Fargo asked
Plaintiff to have his ex-wife "sign over the deed for the
property to Plaintiff," which "prevented" him "from submitting
the 'required' documents"); id. ¶ 140 at 36 (alleging the Billie
Malveaux "interfered with Plaintiff's ability to successfully
complete the loan modification process"). On August 25, 2017,
"Defendant" emailed Plaintiff indicating that "they were not
going to proceed with the loan modification process." Id. ¶ 93

4

at 23.

On August 29, 2017, Plaintiff filed this action and a motion for a TRO enjoining a foreclosure of the property scheduled for August 30, 2017. On the same day, this Court denied the motion for a TRO because Plaintiff had neither notified Defendants of the motion nor shown why he should be excused from doing so. On September 30, 2017, Plaintiff recorded with the San Mateo Assessor-County Clerk-Recorder a notice of the pendency of this action, and brought a copy of that notice to the place where the foreclosure sale was being held. Id. ¶¶ 96-97 at 23. The person conducting the sale took a picture of it with his cell phone. The property was sold in a foreclosure. Id. ¶ 121 at 27.

In the 2AC, Plaintiff asserts claims for: (1) wrongful foreclosure; (2) quiet title; (3) unjust enrichment; (4) violation of California Civil Code section 2923; (5) violation of California Civil Code section 2924; (6) violation of California's Unfair Competition Law (UCL), Civil Code section 17200; (7) accounting and verification of the alleged debt; (8) bank fraud under 18 U.S.C. § 1344; (9) fraud in the inducement; (10) promissory estoppel; (11) slander of title; (12) violation of "the Federal Consumer Protection Bureau Rules"; (13) tortious interference with a contract.[2]

//

---

[2] These claims also were asserted in the 1AC, and in the same order as they are asserted in the 2AC, with the exception of Claim 13 for tortious interference with a contract, which is a new claim that was not asserted in the 1AC.

Plaintiff asserts these claims against Defendants[3] (1) Wells Fargo; (2) Barrett Daffin; (3) First American; (4) Bank Of New York As Trustee For World Savings Remic Trust, Mortgage Pass-Through Certificates, Series 19; (5) Ralph Partners; and (7) Billie Malveaux.[4]

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Twombly, 550 U.S. at 555. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

In considering whether the complaint is sufficient to state

---

[3] The 2AC contains allegations that refer to entities that are neither listed as defendants in the "Named Parties" section of the 2AC nor otherwise discussed in the remainder of the 2AC or its exhibits; the references to these entities appear to have been erroneously copied from another case. See, e.g., 2AC ¶ 132 at 30 (referring to "MERS," "SLS," "MLF" and "HSBC").

[4] The Court noted in its order dismissing the 1AC that in any amended complaint "Plaintiff must either include Ms. Malveaux as a party or allege facts showing why judgment rendered in her absence would be adequate or why Rule 19 is inapplicable for other reasons." Docket No. 36 at 18. In the 2AC, Plaintiff named Billie Malveaux as a Defendant, and she has appeared in the action. See Docket Nos. 68, 71.

United States District Court
Northern District of California

a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1061 (9th Cir. 2008). The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and facts of which the court may take judicial notice. Id. at 1061. However, the court need not accept legal conclusions, including threadbare "recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

Rule 9(b) provides that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "It is well-settled that the Federal Rules of Civil Procedure apply in federal court, 'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.'" Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102 (9th Cir. 2003). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.

Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). The court's discretion to deny leave to amend is "particularly broad" where the court has previously granted leave. Chodos v. West Publ'g Co., 292 F.3d 992, 1003 (9th Cir. 2002).

DISCUSSION

I.   Loan Securitization and Chain of Title

In its Order of December 28, 2017, the Court dismissed most of Plaintiff's claims on the ground that "Plaintiff has failed to allege any defect in the chain of title, or securitization, of his loan." Docket No. 36 at 8. The Court found that judicially noticeable documents demonstrate that, due to the name change of World Savings to Wachovia Mortgage, FSB, and Wachovia's subsequent merger into Wells Fargo, Wells Fargo is the successor-in-interest to World Savings. See id. at 9 (citing Def.'s RJN Exs. A-E). The Court also recognized that other courts have routinely rejected the same theory that Plaintiff has advanced here, namely that Plaintiff's original lender, World Savings Bank, transferred or "securitized" his loan in July 2005 and failed to transfer the chain of title to Wells Fargo, thereby depriving Wells Fargo of the right to enforce the loan contract and to initiate a non-judicial foreclosure. Id. at 8-10. These courts have found that Wells Fargo is the successor-in-interest to World Savings and have upheld the validity of transfers like

8

the one at issue here on that basis. See, e.g., Wolf v. Wells
Fargo Bank, N.A., No. 11-cv-01337-WHA, 2011 U.S. Dist. LEXIS
117835, *3 (N.D. Cal. Oct. 12, 2011) ("World Savings changed its
name to Wachovia Mortgage in late 2007. Wachovia Mortgage then
became part of Wells Fargo Bank in 2009 and is the current holder
of the note."); Nguyen v. Wells Fargo Bank, N.A., 749 F. Supp. 2d
1022, 1024-1025 (N.D. Cal. 2010) ("[J]udicially noticeable
documents reveal that the original lender, World Savings Bank,
FSB, simply changed its name to Wachovia Mortgage, FSB, and is
now a division of Wells Fargo Bank, N.A., so transfers among
those entities were proper"); see also Kalnoki v. First American
Trustee Servicing Solutions, LLC, 8 Cal. App. 5th 23, 41-44
(2017) (holding that even assuming the truth of similar
securitization allegations, they would be insufficient to set
aside foreclosure); Roque v. Suntrust Mortg., Inc., No. C-09-
00040 RMW, 2010 WL 546896, at *3 (N.D. Cal. Feb. 10, 2010)
("Uniformly among courts, production of the note is not required
to proceed in foreclosure and similarly no production of any
chain of ownership is required.").

The claims that the Court dismissed on December 28 because
they were predicated on this chain-of-title or securitization
theory were the entirety of Claims 1, 2, 3 and 11, and Claims 4,
6, 7, 8, 10 and 12 to the extent they relied on that theory. The
Court granted Plaintiff leave to amend these claims but noted
that, in any amended complaint, Plaintiff "must allege facts
plausibly supporting each claim and set forth a viable legal
theory." Docket No. 36 at 10.

//

1    In the 2AC, the vast majority of the claims continue to be

2    predicated on the same securitization or chain-of-title theory

3    that the Court previously rejected.  See 2AC ¶ 15 ("Simply

4    stated, there is no successor---lender [sic] to WORLD SAVINGS in

5    the mortgage loan."); id. ¶ 43 (alleging that "the chain of title

6    was irreversibly broken to the Subject Property with the lender's

7    successor and assign (the true identity of the present

8    beneficiary) unassigned, undocumented and unknown to date.  In

9    other words, there is no lender's successor and assign to WORLD

10   SAVINGS in the mortgage loan"); Pl.'s Response to MTD, Docket No.

11   56 at 10 ("Plaintiff's argument is that defendant are NOT the

12   lawful beneficiary of the note and lacks the authority to

13   foreclose.").  The few new allegations that the 2AC contains

14   cannot save Plaintiff's claims from dismissal because such

15   allegations are intended to support the same previously rejected

16   chain-of-title or securitization theory.  See 2AC ¶ 11 (alleging

17   that a securitization audit showed that the loan at issue was

18   "securitized" into the World Savings Remic Mortgage Pass-Through

19   REMIC certificates Series 19 within one month after it was signed

20   in 2005).[5]

21

22        [5] Plaintiff alleges in passing based on the alleged
     securitization audit that "Wells is attempting to collect on an
23   asset it does not own and which was already paid off."  2AC ¶ 13
     at 4.  It is not clear whether Plaintiff is alleging that the
24   foreclosure at issue in this case was improper because the loan
     at issue had been "paid off" prior to the foreclosure; it appears
25   that the reference to the loan being "paid off" is related
     instead to the notion that payments were made from one entity to
26   another during the alleged securitization process.  See id. 56 at
     16 ("Lender WORLD SAVINGS extinguished its ownership right and
27   beneficial interest in the Note and DOT after the balance of the
     mortgage loan was paid in full in the securitization transaction
28

10

Because (1) judicially noticeable documents demonstrate that due to the name change of World Savings to Wachovia Mortgage, and Wachovia's subsequent merger into Wells Fargo, Wells Fargo is indeed the successor-in-interest to World Savings, Defs.' RJN Ex. A-E, and (2) courts routinely hold that this corporate transaction does not constitute a defect in the chain of title, the claims that are predicated on this theory—namely, the entirety of Claims 1,[6] 2, 3 and 11[7] and Claims 4, 6, 7, 8, 10 and 12 to the extent they are based on this theory—are DISMISSED.

---

on or before the closing date of the securitization trust"). In his opposition to the pending motions to dismiss, Plaintiff does not rely on the claim that his loan had been paid off prior to the foreclosure. But even if Plaintiff were predicating his claims on that theory, a bare allegation that his loan was "paid off" would be insufficient to save his claims from dismissal under Iqbal because many other allegations in the 2AC, particularly those pertaining to his efforts to obtain a loan modification, contradict the notion that the loan at issue had been satisfied (i.e., no loan modification would be necessary if the loan at issue had been paid off). Accordingly, based on the totality of the 2AC and its exhibits, the Court cannot draw the reasonable inference that the loan at issue had been "paid off" and that Defendants can be liable for wrongful foreclosure and related claims on that basis.

[6] Plaintiff's wrongful foreclosure claim also suffers from additional defects, including the fact that he agreed when he signed the trust deed that the lender could at any time appoint a successor trustee. See 2AC Ex. A at § 27; see also id. §§ 1(C) & 1(H) (specifying that successors and/or assignees of World Savings Bank would become lenders and beneficiaries under the deed of trust). See Hammons v. Wells Fargo Bank, N.A., 2015 U.S. Dist. LEXIS 169616, *16-17 (N.D. Cal. 2015) (holding that because "Wells Fargo is the successor-in-interest to World Savings," Wells Fargo has the "contractual right to enforce the note and deed of trust").

[7] Plaintiff's slander of title claim also suffers from additional defects, including that he fails to plead any facts showing that Defendants acted without privilege or justification. See Stowers v. Wells Fargo Bank, N.A., No. 13-cv-05426-RS, 2014 WL 1245070, *7 (N.D. Cal. Mar. 25, 2014).

1  The dismissal of these claims is WITH PREJUDICE given that

2  Plaintiff previously was granted leave to amend them.

3  II.  Homeowner Bill of Rights

4      Plaintiff's fourth and fifth claims seek relief under

5  California's Homeowner Bill of Rights (HBOR), Cal. Civil Code

6  §§ 2923.55 and 2924.

7      The Court previously dismissed these claims with leave to

8  amend on the ground that (1) they were predicated on the same

9  chain-of-title or securitization theory discussed above; (2) that

10  Plaintiff's claim that Defendants violated HBOR's prohibition on

11  "dual-tracking" —the practice of a mortgage servicer continuing

12  to pursue foreclosure of a property while a complete loan-

13  modification application is pending—failed because Plaintiff did

14  not allege that he had submitted a complete loan-modification

15  application; and (3) that Plaintiff's claim that Defendants did

16  not provide him with information in writing in violation of

17  Section 2923.55(b)(1) failed because Plaintiff did "not adequately

18  allege what information he requested and when, or what, if any,

19  response he received from Defendants," or "facts supporting a claim

20  that Defendants' contacts with him prior to foreclosure were

21  insufficient under section 2923.55(a)."  See Docket No. 36 at 11-13.

22      Plaintiff's HBOR claims in the 2AC continue to fail to state

23  a claim for relief.

24      First, the HBOR claims in the 2AC are based at least in part

25  on the chain-of-title or securitization theory that the Court has

26  rejected, as discussed above.

27      Second, Plaintiff's claim that Defendants violated the

28  HBOR's prohibition on "dual-tracking" fails on the ground that

12

Plaintiff admits in the 2AC that his loan-modification application was never completed because he was unable to submit the required documents as a result of non-cooperation by his ex-wife. 2AC ¶ 129 at 30 (alleging that his application was "complete but for the note"); id. ¶¶ 86-87 at 22 (alleging that Wells Fargo asked Plaintiff to have his ex-wife "sign over the deed for the property to Plaintiff," which "prevented" him "from submitting the 'required' documents"); id. ¶ 140 at 36 (alleging that Billie Malveaux "interfered with Plaintiff's ability to successfully complete the loan modification process"). In the absence of allegations that the loan-modification application in question was complete at the time of the foreclosure, Plaintiff's "dual-tracking" claim under section 2923.6(c) fails.[8] See Cal. Civ. Code § 2923.6(c)(providing protections for a borrower who "submits a complete application for a first lien loan modification"); Mace v. Ocwen Loan Servicing, LLC, 252 F. Supp. 3d 941, 946 (N.D. Cal. 2017) (holding that a loan-modification application is "complete" for the purpose of triggering the protections of HBOR if a plaintiff has timely provided all documents that a lender has required in advance for the submission of a loan-modification application); Cal. Civ. Code § 2923.6(h) (same).

Third, Plaintiff's claim that Defendants did not provide him with information in writing upon his request, in violation of

_____

[8] The same failure to allege completeness requires dismissal of Plaintiff's claim that Defendants only notified him of the denial of his loan-modification application by email, not in a compliant written denial under section 2923.6(c)(1)-(3). See 2AC ¶¶ 93-94 at 23.

United States District Court
Northern District of California

section 2923.55(b)(1), also is insufficiently pleaded, because, once again, Plaintiff does not adequately allege what information he requested and when, or what, if any, response he received from Defendants.  Likewise, he once again does not allege facts supporting a claim that Defendants' contacts with him prior to foreclosure were insufficient under section 2923.55(a) despite the declaration of compliance attached to the recorded notice of default.  See 2AC Ex. E. at 4.  The Court does not assume the truth of the declaration of compliance, but Plaintiff must allege facts giving rise to a claim that the declaration of compliance is inaccurate, not merely a conclusory allegation of the legal standard.  Iqbal, 556 U.S. at 678; see also Kamp v. Aurora Loan Services, 2009 U.S. Dist. LEXIS 95245, *6-7 (C.D. Cal. 2009) (holding that plaintiffs' "conclusory assertions are contradicted by the notice of default" that included the HBOR declaration of compliance).

Finally, Plaintiff alleges that he was "prejudiced" by Wells Fargo's failure to assign a "single point of contact" to his loan-modification application.  2AC ¶ 129 at 29-30.  It appears that Plaintiff does not intend to seek relief under HBOR based on this theory, as he does not even mention it in his opposition.  See generally Docket No. 56.  As Defendants point out, this theory fails in any event because California Civil Code section 2923.7(e) provides that "[f]or purpose of this section, 'single point of contact' means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in [Civil Code §§] (b) to (d), inclusive." (emphasis added).  Here, Plaintiff alleges that

14

several Wells Fargo representatives (as opposed to a single Wells Fargo representative) served as his point of contact in connection with the loan-modification application at issue. See 2AC ¶¶ 78-87 at 22. Such allegations do not raise the reasonable inference that Wells Fargo violated section 2923.7 because that statute expressly permits a "team of personnel" to serve as the point of contact.

Accordingly, because Plaintiff previously was granted leave to amend his HBOR claims, and because his claims continue to fail to state a claim for relief under HBOR, the fourth and fifth claims in the 2AC are DISMISSED WITH PREJUDICE.

III. Unfair Competition Law

In its order of December 28, 2017, the Court dismissed with leave to amend Plaintiff's sixth claim under the UCL on the grounds that it was derivative of Plaintiff's HBOR and wrongful foreclosure claims, and that Plaintiff had failed to adequately allege that he lost money or property as a result of Defendants' actions (i.e., he failed to show the causation and injury required by the UCL). Docket No. 36 at 13-14.

Defendants once again move to dismiss this claim on the basis that it is entirely derivative of Plaintiff's other defective claims. In his opposition, Plaintiff concedes that this is the case; he argues that his UCL claim is based on the same allegations that formed the predicate for his HBOR and wrongful foreclosure claims. See Docket No. 56 at 16. Because the Court has dismissed Plaintiff's HBOR and wrongful foreclosure claims, and because Plaintiff previously was granted leave to amend his sixth claim but has failed to allege any facts in the

2AC to support a viable claim under the UCL,[9] the Court DISMISSES the sixth claim WITH PREJUDICE.

IV. Accounting

In its Order of December 28, 2017, the Court dismissed with leave to amend Plaintiff's seventh claim for an accounting, and it noted that, in any amended complaint, "among the other elements that Plaintiff must plead in support of any amended claim for an accounting, he must plead facts giving rise to a plausible claim that Defendants have not already provided him with the information that he seeks, or that he does not already have ready access to the information" in connection with any amounts that Defendants may owe him based on the sale of the property. Docket No. 36 at 14-15.

Defendants move to dismiss this claim on the ground that Plaintiff cannot plead the necessary relationship between the parties, and does not plead that any Defendant owes Plaintiff a definite sum of money. In his opposition, Plaintiff offers the same response he previously offered, namely that Defendants owe him a sum of money represented by the value of his home over and above the amount that he owed Defendants when the home was sold. Docket No. 56 at 17. He also repeats the same arguments he made in support of his wrongful foreclosure claims, namely that Defendants "must prove that the amount claimed in the Notice of

---

[9] In the 2AC, Plaintiff continues to fail to allege, among other required elements, that he lost money or property as a result of Defendants' actions. Bus. & Prof. Code § 17204; Daro v. Superior Court, 151 Cal. App. 4th 1079, 1098 (2007) ("[A] private person has standing to sue under the UCL only if that person has suffered injury and lost money or property 'as a result of such unfair competition.'").

Default is not only a valid debt, but they are the beneficiaries of the original lender entitled to enforce the note and deed of trust." Id. In the 2AC, Plaintiff fails to allege any facts to support the elements for an accounting claim that the Court discussed in its Order of December 28, specifically, facts showing that Defendants have not already provided him with the information that he seeks, or that he does not already have ready access to information in connection with any amounts that Defendants may owe him based on the sale of the property.

Because the Court previously granted Plaintiff leave to amend this claim but he has failed to allege any facts in the 2AC to support a viable claim for an accounting, the Court DISMISSES the seventh claim WITH PREJUDICE.

V.   Fraud

Plaintiff's eighth, ninth, and tenth claims allege, under various legal theories, that Defendants defrauded him by offering him a loan modification to induce him to dismiss his state court lawsuit, and then recanting the offer and foreclosing on the property without adequate notice after he dismissed his state court lawsuit in reliance. The Court previously dismissed these claims on the ground that Plaintiff's allegations did not support the theory that Defendants breached an agreement to give Plaintiff a loan modification; Plaintiff did not plead (1) any misrepresentation by Defendants, (2) a failure by Defendants to consider him for a loan modification after he dropped his state court lawsuit, or (3) a promise of a loan modification if he dropped his lawsuit in state court. Docket No. 36 at 15-16. The Court noted that Plaintiff's allegations in the 1AC showed that

Wells Fargo offered to "consider him" for a loan modification if he qualified for one. Id. The Court also noted that Plaintiff's allegations failed to meet the requirements of Federal Rule of Civil Procedure 9, and that in any amended complaint, Plaintiff would need to plead facts alleging each element of each claim, including the "'who, what, when, where, and how' of the misconduct charged," as well as statements that Defendants made to him and the actions that they took that made those statements misleading or fraudulent. Id. at 16.

Defendants move to dismiss these claims on the ground that the claims continue to suffer from the same defects that the Court previously recognized. In his opposition, Plaintiff repeats the same arguments he made in connection with his "dual-tracking" HBOR claims.

The Court finds that the claims at issue are once again subject to dismissal. In the 2AC, Plaintiff repeated the same allegations that supported his fraud claims in the prior iteration of the complaint without adding any new allegations that would suggest a misrepresentation by any Defendant in connection with the loan modification, or a failure by Wells Fargo to consider him for a loan modification. Additionally, Plaintiff concedes in the 2AC his failure to submit all documents required for the loan modification, albeit due to his ex-wife's failure to cooperate, as discussed above. See 2AC ¶¶ 129 at 30, 86-87 at 22, 140 at 36. Accordingly, the Court cannot reasonably infer that Plaintiff's failure to obtain the loan modification was the result of fraud, misrepresentations, or the breach of any agreement involving Defendants.

Plaintiff's tenth claim for promissory estoppel is subject to dismissal for the additional reason that it is barred by the statute of frauds, which provides that any agreement "for the sale of real property, or of an interest therein," is invalid unless it is "in writing and subscribed by the party to be charged or by the party's agent." Cal. Civil Code § 1624(a), (a)(3). A mortgage is subject to the statute of frauds. Cal. Civil Code § 2922. The Court previously dismissed this claim with leave to amend, noting that, in any amended complaint, Plaintiff would need to allege facts supporting the existence of a settlement agreement or other writing that would satisfy the statute of frauds. Plaintiff did not plead any such allegations in the 2AC. And, in his opposition to Defendants' motions to dismiss this claim, Plaintiff merely repeats the same arguments he made in support of his wrongful foreclosure claims.

Because the Court previously granted Plaintiff leave to amend his eighth, ninth, and tenth claims, and because the claims as alleged in the 2AC continue to fail to state a claim for relief, the Court DISMISSES these claims WITH PREJUDICE.

VI. Violation of Federal Consumer Protection Bureau Rules

Plaintiff alleges that "Defendant Wells Fargo violated each the [sic] rules of the Federal Consumer Protection Bureau that are commensurate and correspond to those of the California homeowners bill of rightsst [sic]." 2AC ¶ 139 at 36. The Court previously dismissed this claim on the ground that it was derivative of Plaintiff's HBOR claims and because Plaintiff failed to address it in his opposition to prior motions to dismiss. See Docket No. 36 at 17.

19

1    Defendants once again move to dismiss this claim on the

2    ground that it is derivative of Plaintiff's HBOR claims.  In his

3    opposition, Plaintiff essentially concedes the derivative nature

4    of this claim.  <u>See</u> Pl.'s Opp'n at 20 (pointing to "Argument for

5    Claim Under Civil Code Section 2923.55 Survives Dismissal

6    hereinabove" under section regarding "Consumer Protection Bureau

7    Rules" and providing no other argument in support of claim at

8    issue).

9    Because the Court previously granted Plaintiff leave to

10   amend this claim; because the 2AC does not contain any new

11   allegations that would entitle Plaintiff to relief; and because

12   this claim is derivative of Plaintiff's HBOR claims, which the

13   Court has dismissed, the Court DISMISSES the twelfth claim WITH

14   PREJUDICE.

15   VII. Tortious Interference with Contract

16   Plaintiff alleges that Billie Malveaux, his ex-wife,

17   "interfered" with his ability to successfully complete the loan-

18   modification process "by failure to calling Wells Fargo and

19   altering information.  In their files [sic]."  2AC ¶ 140 at 36.

20   Plaintiff also alleges that "Wells cooperated with Defendant

21   Malveaux in the tortious interference with both the real estate

22   contract and the loan modification process," and that "Defendant

23   violated several consumer protection laws."  <u>Id.</u> ¶¶ 141–42 at 36-

24   37.  This claim appears to be asserted against Defendants Wells

25   Fargo and Billie Malveaux only.

26   Wells Fargo moves to dismiss this claim on the ground that

27   no contract between it and Plaintiff is adequately alleged with

28   respect to a loan modification, that a claim predicated on any

20

such contract is barred by the statute of frauds, and that, even if Plaintiff had sufficiently alleged a contract with Wells Fargo, any claim for tortious interference with that contract by Wells Fargo would fail as a matter of law because a claim for interference with a contract cannot lie against a party to the contract.

Billie Malveaux also moves to dismiss this claim. In her motion, she states that the 2AC is "frivolous," that she did not interfere with Plaintiff's attempts at loan modification, and that there is "no factual basis to support collusion with Wells Fargo in this lawsuit." Docket No. 71 at 2.

In his opposition, Plaintiff's only statement as to this claim is that unspecified Defendants "are the beneficiaries of the original lender for the reasons plead succinctly." Docket No. 56 at 20.

The Court finds that the claim as to Wells Fargo is subject to dismissal. The claim appears to be predicated on the notion that an agreement between Plaintiff and Wells Fargo existed regarding a loan modification. As discussed above in connection with claims eight, nine, and ten, Plaintiff has failed to sufficiently allege in two separate iterations of the complaint that an agreement existed between himself and Wells Fargo pursuant to which Wells Fargo agreed to provide Plaintiff with a loan modification. But even if such an agreement had been adequately alleged, a claim against Wells Fargo for tortious interference with a contract would fail as a matter of law to the extent that Wells Fargo is alleged to be a party to the contract. See Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th

503, 514 (1994) ("[T]he tort cause of action for interference with a contract does not lie against a party to the contract."). Accordingly, this claim is DISMISSED WITH PREJUDICE as to Wells Fargo.

Because the Court has dismissed with prejudice all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state-law claim against Billie Malveaux[10] for tortious interference with the performance of a contract. See 28 U.S.C. § 1367(c); Perez v. Wells Fargo Bank, N.A., 929 F. Supp. 2d 988, 1001 (N.D. Cal. 2013) (holding that, after dismissing claims over which it has original jurisdiction, "the district court has discretion to decline to exercise its supplemental jurisdiction and to remand the remaining state law claims to state court."). This claim, therefore, is DISMISSED WITHOUT PREJUDICE. Plaintiff may re-file the claim in state court.

CONCLUSION

The Court DISMISSES WITHOUT PREJUDICE the claim against Billie Malveaux for tortious interference with the performance of a contract. Plaintiff may re-file that claim in state court.

The Court DISMISSES all other claims in the 2AC WITH PREJUDICE. The Clerk shall close the file.

IT IS SO ORDERED.

Dated: October 2, 2018

_____

CLAUDIA WILKEN
United States District Judge

United States District Court
Northern District of California

---

[10] Billie Malveaux appears to be a citizen of California based on her filings in this action, as well as the 2AC and its exhibits.